# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HENRY WALKER, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 3:14-CV-0429-GCS |
| MICHAEL ATCHISON, ) | |
| KYLE EDWARDS, ) | |
| CHRISTOPHER FLEMING, ) | |
| RICHARD HARRINGTON, ) | |
| JEFFREY HUTCHINSON, ) | |
| RICHARD RANSON, ) | |
| and CLAYTON YOUNG, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Defendants' motion for summary judgment (Doc. 176). Plaintiff Henry Walker opposes the motion (Doc. 192).[1] For the reasons delineated below, the Court grants in part and denies in part the motion for summary judgment.

Walker, an inmate of the Illinois Department of Corrections ("IDOC") previously incarcerated at Menard Correctional Center ("Menard"), filed a *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights (Doc. 1). Walker alleges that officials at Menard failed to protect him from being physically attacked by other

---

[1]      On July 28, 2016, the Court assigned attorney Vincenzo Field for Walker (Doc. 75). Thereafter, attorneys Frank Newell, Tara Thompson, and Joshua Loevy entered appearances for Walker (Doc. 80, 91 and 134). On July 18, 2018, attorney Field was granted leave to withdraw as counsel for Walker (Doc. 163).

inmates. Walker, through court appointed counsel, filed a Second Amended Complaint

containing allegations against Defendants Michael Atchison, Kyle Edwards, Christopher

Fleming, Richard Harrington, Jeffrey Hutchinson, Richard Ranson and Clayton Young

(Doc. 88). Walker's second amended complaint contains the following counts:

> Count I – failure to intervene in violation of the Eighth Amendment;
> Count II – failure to protect in violation of the Eighth Amendment;
> Count III – conditions of confinement claim in violation of the Eighth Amendment;
> Count IV – substantive due process (state created danger);
> Count V -retaliation for reporting to prison officials that his cellmate had two deadly weapons in their shared cell;
> Count VI – conspiracy;
> Count VII – Illinois State law claim of intentional infliction of emotional distress;
> Count VIII – Illinois State law claim for negligent or willful and wanton conduct;
> Count IX – Illinois State law *respondeat superior* claims against Hutchinson, Harrington and Atchison; and
> Count X – Illinois State Law claim of indemnification.

(Doc. 88).

Defendants move for summary judgment arguing: (1) Defendant Hutchinson did

not work at Menard during any of the relevant times; (2) Walker cannot provide evidence

to support his failure to protect claim; (3) Walker's failure to intervene claim is duplicative

of the failure to protect or, alternatively, Walker cannot provide evidence of failure to

intervene; (4) Walker cannot provide evidence to support his conditions of confinement

claim; (5) Walker's substantive due process claim is duplicative; (6) Walker cannot

provide evidence to support his retaliation claim; (7) Walker's conspiracy claim is

superfluous and he cannot provide evidence to support this claim; (8) Walker cannot

provide evidence to support his intentional infliction of emotional evidence claim; (10)

Walker's *respondeat superior* claim is not a cognizable claim upon which relief may be

granted; (11) Walker's supplemental state law claims are barred by state sovereign immunity and the Eleventh Amendment; and (12) Defendants are entitled to qualified immunity. Walker counters that genuine issues of fact exist which entitles him to a trial. As the motion for summary judgment is fully briefed, the Court turns to address the merits of the motion.

**FACTS**

The following facts are taken from the record and presented in the light most favorable to Walker, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Walker was housed at Menard from late fall of 2010 until July 24, 2013. Defendant Atchison was the Warden of Menard from December 11, 2011 through January 2013. Defendant Harrington was the Warden of Menard from January 2013 through Walker's transfer from Menard.

On September 21, 2012, Walker reported that his cellmate had multiple weapons in their cell. At this time, inmate Franklin Lofton was Walker's cellmate and the leader of a gang called the Four Corner Hustlers. That same day, Correctional Officer Defendant Christopher Fleming conducted a search of the cell and found two homemade shanks (knives). Defendant Fleming issued Walker an offender disciplinary report for dangerous contraband, damage or misuse of property, and contraband/unauthorized property. Lofton was also issued a disciplinary ticket.

As a result of the ticket, Walker was found guilty of the weapons violations and was placed in segregation for six months. Walker was expected to be in segregation on

this offense until March 2013. However, due to an administrative error, Walker was released from segregation on October 4, 2012. Walker filed a grievance concerning his early release on October 18, 2012. Walker's correctional counselor acknowledged the error, and after two weeks of being released from segregation Walker was returned to segregation and stayed there until April 2013. Similarly, Lofton was placed in segregation for the same offense, and he was not released early like Walker. Walker feared the early release would lead other inmates to believe he was an informant. Walker believes that because he was inadvertently released from segregation he was labeled as a "snitch."

In April 2013, Walker was removed from segregation, and was assigned to Gallery 7 in the West House. This unit was designated for inmates who had assaulted staff or been ticketed for weapons violations. Walker testified that from April 2013 to May 27, 2013, he was not threatened personally.

On May 27, 2013, around 2:30 p.m., Walker became aware of a threat against him. Specifically, Walker learned that members of Lofton's gang were targeting him on their belief that Walker "snitched" on Lofton. After learning of the threat, Walker saw an officer with badge number 9347, Officer Kyle Edwards. Walker informed Defendant Edwards that his life was in danger, and he needed to speak with a lieutenant or a major. Walker testified that Edwards responded, "Who are you getting ready to tell on now?" and told him to tell the next shift. Walker claims that Defendant Edwards laughed at him and stated, "A big guy like you shouldn't have anything to worry about." Prior to this incident, Walker had filed a grievance against Defendant Edwards.

Shortly thereafter, Walker, on the way to dietary with his cell block, alerted Defendants Ranson, Young and an unknown lieutenant about the threat. Walker claims that Defendants Ranson, Young and the lieutenant told him to keep moving or go without eating. The officers did not offer Walker the option of protective custody. After the second refusal of help, Walker felt that he could not get help from correctional staff, and Walker headed to dietary.

At dietary, Walker was attacked by multiple inmates that were members of the Four Corner Hustlers. Walker believes he was attacked for being a snitch, and that the attack was in retaliation for Lofton's punishment for possessing weapons. Walker was beaten and stabbed 13 times with an eight-inch ice pick-style weapon. After the attack, Walker was taken to an outside hospital for treatment of his injuries, which included a partially collapsed lung.

Both Atchison, as Warden, and Harrington, as Assistant Warden, received a September 21, 2012 email from Correctional Officer Phelps with a subject line of "Homemade weapons found in North 2 cell 5-35." The email informed them of the discovery of the weapons in Walker's and Lofton's cell and the circumstances surrounding the incident.

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. PROC. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any

doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof." *Celotex*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support that assertion by citing to particular materials in the record or by showing that the materials in the record do not establish the absence of a genuine dispute. *See* Fed. R. Civ. Proc. 56. If the non-moving party does not show evidence exists that would reasonably allow a fact-finder to decide in its favor on a material issue, the court must enter summary judgment against the non-moving party. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The Court's role at summary judgment is not to evaluate the weight of evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## Analysis

### Defendant Hutchinson

First, Defendants argue that Hutchinson is entitled to summary judgment on all the claims against him because he was not employed by IDOC during the relevant times alleged in the second amended complaint. As to this argument, Walker's brief in opposition is silent. Further, the record reflects that Hutchinson worked for the IDOC

from May 1, 1980 to February 2004, and from March 2016 until his retirement on December 30, 2016. During his employment with the IDOC, Hutchinson was the Warden of Menard from October 1, 2016 until December 30, 2016. The allegations in Walker's second amended complaint occurred in September 2012 through May 2013. Clearly, Hutchinson was not personally involved in any of the alleged conduct contained in the second amended complaint, and summary judgment is proper on the claims against him.

### Defendant Fleming

Next, the Court finds that Defendant Fleming is entitled to summary judgment on all the claims against him. A review of the record indicates that Fleming's only involvement in this case was his search of Walker's and Lofton's cell on September 21, 2012, and his issuance of a disciplinary report that same day. Clearly, Fleming was not personally involved in any of the alleged conduct contained in the Second Amended Complaint that gave rise to Walker's claims, and summary judgment is proper on the claims against him.

### Failure to Protect (Count II)

As to the failure to protect claim, Defendants argue that Walker cannot establish that Defendants were aware of any substantial risk of harm that Walker faced. Specifically, Defendants Atchison and Harrington argue they had no actual knowledge of a substantial risk of serious harm because Walker never conveyed any concerns to them. Similarly, Defendants Edwards, Ranson and Young contend that Walker did not present a specific threat to the attention of these three Defendants. Walker counters that he has raised sufficient issues of material fact as to Defendants Atchison and Harrington

and that he has satisfied the deliberate indifference prong as to Edwards, Ranson and Young.

Prisons are by their nature danger places. *See Farmer v. Brennan*, 511 U.S. 825, 858 (1994) (Thomas, J., concurring). Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation omitted); *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). An Eighth Amendment failure to protect claim arises when a plaintiff is incarcerated under conditions posing a substantial risk of serious harm, and the defendant acts with deliberate indifference to the prisoner's health or safety. *See Farmer*, 511 U.S. at 834; *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

An inmate can prevail on a claim that a prison official failed to protect him if the official showed "deliberate indifference;" that is, that the defendant was subjectively aware of and disregarded a "substantial risk of serious harm" to the inmate. *Farmer*, 511 U.S. at 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). To make a guard subjectively aware of a serious risk of attack, the inmate must communicate a specific and credible danger. *See Santiago*, 599 F.3d at 758–759; *Santiago v. Lane*, 894 F.2d 218, 220, 223–224 (7th Cir. 1990); *Young v. Selk*, 508 F.3d 868, 873-874 (8th Cir. 2007). "[A] generalized risk of violence is not enough, for prisons are inherently dangerous places." *Wilson v. Ryker*, No. 11-2086, 451 Fed. Appx. 588, 589 (7th Cir. Dec. 12, 2011)(internal citations and quotations omitted). Instead, a plaintiff must allege "a tangible threat to his safety or well-being" and "a substantial risk of future harm." *Id.* Prison officials must be aware of a specific, impending, and substantial threat to Plaintiff's safety. *See Pope v. Shafer*, 86 F.3d 90, 92

(7th Cir. 1996). "A substantial risk of serious harm is one in which the risk is so great that it is almost certain to materialize if nothing is done." *Wilson*, 451 Fed. Appx. at 589.

Viewing these facts in the light most favorable to Walker, the undersigned finds that there are questions of material fact that preclude summary judgment as to all these Defendants. The record reflects that Walker specifically told Defendants Edwards, Ranson and Young that he was going to be attacked, that these Defendants did nothing to protect him, and he was attacked shortly thereafter. First, Walker told Defendant Edwards that he was going to be attacked and Edwards responded, "Who are you getting ready to tell on now?" and stated, "A bug guy like you shouldn't have anything to worry about." Edwards also told him to wait until the shift change. Further, Walker told Defendants Ranson, Young and an unknown lieutenant that he thought there was a threat upon his life. These Defendants told Walker that he could either go eat at dietary or stay in his cell. Had any of these Defendants acted, Walker would not have been in the position to be attacked. Thus, the Court denies the motion for summary judgment as to these Defendants.

Likewise, the Court finds that there are questions of material fact as to whether Defendants Atchison and Harrington were deliberately indifferent to Walker as they were aware of conflict between Walker and Lofton through a September 21, 2012 email regarding the shakedown of the cell. The Court notes that as supervisors, Defendants Atchison and Harrington can only be liable for their own actions. The doctrine of *respondeat superior* is not applicable to § 1983 claims. A defendant can only be held liable if he was "personally responsible for the deprivation of a constitutional right." *Sanville v.*

*McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)(quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). An individual can only be held liable for his or her own personal actions and their own knowledge, and they are not liable for the knowledge or action of those individuals whom they supervise. *See Vinning-El v. Evans,* 657 F.3d 591, 592 (7th Cir. 2011); *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009).

"[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez*, 251 F.3d at 651. However, a supervisor can be personally involved in the violation when he "acts or fails to act with a deliberate or reckless disregard of [a] plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986); *Sanville*, 251 F.3d at 740. "Supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011)(quoting *Chavez*, 251 F.3d at 651). A supervisor is liable only for his own misconduct. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). While the Court notes that the evidence regarding this claim against Defendants Atchison and Harrington is slim, the Court finds there is enough evidence that a jury must determine whether both Atchison and Harrington were aware of the need to protect Walker and failed to do so.

**Failure to Intervene (Count I)**

As to this claim, Defendants argue that this claim is identical to the failure to protect claim regarding the May 27, 2013 attack, thus, Defendants assert that Walker cannot recover twice for the same injury. Further, Defendants argue that Walker cannot

show that there was a constitutional violation to which any Defendant could have reasonably intervened. The Court rejects Defendants' argument that this claim is identical to the failure protect claim and declines to dismiss the claim at this stage of the proceedings. While the claims are based on a similar set of facts, the elements for these claims are different.

The Seventh Circuit recognizes the "failure to intervene" basis for a constitutional violation under the Eighth Amendment. *See Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005)(citing *Fillmore v. Page,* 358 F.3d 496, 506 (7th Cir. 2004); *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir. 1982)). To succeed on this claim, Walker must demonstrate that the Defendants (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). An inmate asserting a failure to intervene claim against officers who were present when the inmate's constitutional rights were violated by a different officer must show that the officers had reason to know that excessive force was being used and the officers "had a realistic opportunity to intervene to prevent the harm from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Again, viewing the evidence in the light most favorable to Walker, the Court finds that Walker survives summary judgment on this claim against Defendants Young and Ranson. Here, it is plausible that Walker could show that his rights were violated when Walker informed both Defendants Young, Ranson and the unknown lieutenant that his life was in danger and they refused to help him. Thus, the question of whether they both failed to intervene is one left for the jury to decide. However, the Court finds that

summary judgment is proper as to Defendants Edwards, Atchison and Harrington on the failure to intervene claim as there is no evidence to support the claim against them.

**Conditions of Confinement (Count III)**

To succeed on a claim related to conditions of confinement, a plaintiff must establish both an objective and subjective element. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). As to the objective element, a prisoner must establish that the conditions deny him "the minimal civilized measure of life's necessities," creating an excessive risk to the prisoner's health or safety. *Farmer*, 511 U.S. at 834. To do so, he must show the conditions resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The subjective component of a claim for unconstitutional conditions of confinement requires demonstrating that a defendant had a culpable state of mind, that is the defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner. *See Farmer*, 511 U.S. at 837, 842. While mere negligence does not amount to a constitutional violation, a plaintiff satisfies the deliberate indifference standard by showing that a prison official acted, or failed to act, despite the official's knowledge of a substantial risk of serious harm from the alleged unconstitutional conditions. *See Farmer*, 511 U.S. at 842; *Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986). That is, prison officials must act to prevent "unreasonable peril" or to address "preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016).

As with the failure to intervene claim, Defendants argue that Walker cannot recover twice for the same injury; that this claim is duplicative of his failure to protect and failure to intervene; and that summary judgment in favor of Defendants on this claim is proper. While the Court agrees with Defendants that Walker cannot recover twice for the same injury seeking the same set of damages, the Court notes that plaintiff is entitled to plead and present alternate theories. Therefore, the Court will properly instruct the jury on damages at that time.

Further, Defendants argue that summary judgment is proper on this claim as Walker cannot provide evidence that any of the Defendants were aware that his conditions of confinement posed a specific threat to his safety or that Defendants consciously subjected Walker to these conditions. As addressed in the failure to protect claim, the Court finds that a reasonable jury could conclude that Atchison and Harrington had direct knowledge of a serious credible threat to Walker's safety and failed to take any steps to protect him. Thus, the Court denies that motion for summary judgment as to the conditions of confinement claim as to Atchison and Harrington and grants the motion as to the remaining Defendants.

**Substantive Due Process (State created danger) (Count IV)**

Defendants argue that they are entitled to summary judgment on Walker's substantive due process (state created danger) claim because it cannot be brought as a claim separate from Walker's Eighth Amendment claims. Walker counters that this claim is separate and distinct from his other claims, thus, he may bring this claim as well.

The Supreme Court has held that in the context of unnecessary and wanton infliction of pain in penal institutions, the Eighth Amendment serves as the primary source of substantive protection for convicted prisoners. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986). Under these circumstances, the Due Process Clause of the Fourteenth Amendment does not provide a prisoner any more protection than the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Id. See also Pyles v. Fahim*, 771 F.3d 403, 408-409 (7th Cir. 2014). When a constitutional amendment "provides an explicit textual source of constitutional protection" for certain actions, a prisoner may not also bring that same claim under the notion of substantive due process. *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Defendants are correct, and Walker cannot bring a § 1983 claims based on substantive due process in the same complaint as his Eighth Amendment claims. *See Graham*, 490 U.S. at 395. Therefore, the Court grants summary judgment in favor of Defendants and against Walker on Count IV – substantive due process (state created danger).

**Retaliation (Count V)**

Next, Defendants contend that Walker does not have evidence to support his claims that Defendants failed to intervene or failed to protect him from serious harm, and that Walker does not have evidence to show that any of the other alleged actions are connected to the purported protected conduct. Walker contends that Defendant Edwards

retaliated against him by refusing to help and by refusing to protect him from harm because Walker previously filed a grievance against Edwards.[2]

To prevail on his First Amendment retaliation claim, Plaintiff Walker must show that: (1) he engaged in activity protected by the First Amendment; (2) Defendants took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in Defendants' decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). It is "common knowledge that snitches face unique risks in prison" *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008).

The undersigned finds that a reasonable juror could find that Defendant Edwards failed to protect Walker in retaliation for filing a past grievance against him. A reasonable jury could conclude the comments Defendant Edwards supposedly made after Walker asked for protection coupled with Walker filing a grievance against Edwards is sufficient to establish disputes of fact regarding Walker's claim of retaliation. Thus, the Court also denies summary judgment as to this issue as to Edwards and grants as to the other Defendants.

---

[2]     The Court notes that while Walker's retaliation claim in the Second Amended Complaint is against all the named Defendants his brief only addresses the claim as if it were against Defendant Edwards. Thus, the Court treats the retaliation claim the same as being only asserted against Defendant Edwards.

**Conspiracy (Count VI)**

Defendants argument as to Walker's conspiracy claim is twofold: (1) Walker's claim is unnecessary as all Defendants are state actors, and (2) Walker lacks evidence to show a meeting of the minds.   Walker counters that Defendants misconstrue his conspiracy claim as brought under 42 U.S.C. § 1985(3), when it is a claim brought under 42 U.S.C. § 1983. Walker also counters that he has presented enough evidence to support his conspiracy claim in that Defendants Ranson and Young conspired with an unknown lieutenant.[3]

To prevail on a conspiracy claim, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Put differently, Walker must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018), overruled in part on other grounds by *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019) (noting that Fourth Amendment, not Due Process Clause, governed claim for wrongful pretrial detention). "Because conspiracies are often carried out clandestinely and direct evidence is rarely available,

---

[3]      Walker's second amended complaint brings the conspiracy claim against all Defendants. However, in response to the motion for summary judgment, Walker specifically states "Plaintiff has satisfied this requirement as to Defendants Ransom[] and Young and Plaintiff has put forth evidence that Ransom[] and Young conspiring together or in combination with an unknown lieutenant." (Doc. 192, p. 27). Therefore, the Court will consider this claim against only Ranson and Young.

plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman*, 776 F.3d at 511

The Court rejects Defendants argument that the conspiracy claim is unnecessary. Although the Seventh Circuit has held that conspiracy claims for the violation of constitutional rights are superfluous when all the actors involved are state employees, those cases appear to have involved claims or analysis under 42 U.S.C. § 1985.[4] *See Scott v. City of Chicago*, No. 15-1281, 619 Fed. Appx. 548, 548 (7th Cir. Nov. 2, 2015)(stating that "[a]ll of the employees of the defendants in this suit, however, are public employees (plus their employer), which means that a conspiracy claim has no role to play.");[5] *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013)(noting that "Turley's conspiracy claim [under 42 U.S.C. § 1985] is superfluous in light of the fact that all named defendants are state actors").[6]

Here, Walker brought his claim pursuant to 42 U.S.C. § 1983, thus Defendants citation to 42 U.S.C. § 1985(3) is inapposite. Further, the Seventh Circuit issued a decision suggesting that a plaintiff may simultaneously pursue substantive and conspiracy claims

---

[4]     Subsection 3 of 42 U.S.C. § 1985 provides a right of action against private citizens who conspire with public officials to deprive individuals of their constitutional rights who would otherwise be immune to suit under 42 U.S.C. § 1983. 42 U.S.C. § 1985(3).

[5]     The Seventh Circuit found: "A conspiracy between private parties and state actors authorizes suit against the private parties in federal court." *Scott*, 619 Fed. Appx. at 548.

[6]     While the *Turley* court noted that, "Turley's conspiracy claim is superfluous in light of the fact that all named defendants are state actors," it explicitly noted that the conclusion was in the context of § 1985 claim. 729 F.3d at 649, 649, n. 2 ("As we noted in *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009), the function of a conspiracy claim under 42 U.S.C. § 1985(3) is to 'permit recovery from a private actor who has conspired with state actors.' … When, as here, the defendants are all state actors, 'a § 1985(3) claim does not add anything except needless complexity.'[]") (citation omitted).

under 42 U.S.C. § 1983. *See. e.g., Daugherty v. Page*, 906 F.3d 606, 610, 612 (7th Cir. 2018)(concluding plaintiff had produced inadequate evidence to defeat summary judgment on his § 1983 conspiracy claim against state officials, but noting that the district court had erred in granting summary judgment against him on his First Amendment retaliation claim). Thus, the Court denies Defendants' motion for summary judgment based on this argument.

Next, Defendants merely argue that there was no meeting of the minds because Defendants worked on different shifts and at different parts of the prison. In response, Walker claims that the evidence describes a conspiracy in which Defendants Young and Ranson, as well as an unknown lieutenant were all present together at the same time when he told them his life was in danger and they did nothing to help him. Based on the evidence contained in the record, the Court finds a reasonable jury could infer that these three officers shared a mutual agreement and a strategy to violate Walker's constitutional rights by failing to provide him with protection. Thus, the Court denies the motion as to Defendants Ranson and Young and grants the motion as to the other Defendants.

### Intentional Infliction of Emotional Distress (Count VII)

To survive summary judgment on his IIED claims, Walker must show that: "(1) [Defendants'] conduct was extreme and outrageous; (2) [Defendants] either intended to inflict severe emotional distress or knew that there was at least a high probability that [they] would inflict severe emotional distress; and (3) the conduct did cause severe emotional distress." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010)(citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Illinois courts have

required a "heightened level of egregiousness" and conduct that has been "outrageous" and "extreme" to maintain an IIED claim. "IIED requires more than 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988) (citation and internal quotation marks omitted).

Under Illinois law, a defendant's conduct must be such that the "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!'" *Honnaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citations omitted). In *McGrath*, for example, the Supreme Court of Illinois cited non-exclusive factors which can help inform this rather fluid standard. *See McGrath*, 533 N.E.2d at 809–810. One factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff. *Id*.

Viewing the facts in the light most favorable to Walker, the Court finds that he has presented sufficient questions of material fact that a jury should decide. A reasonable jury, for example, could conclude that failing to protect an inmate from an attack from another inmate despite having knowledge of the attack constitutes intentional infliction of emotional distress. This conduct could also "go beyond all possible bounds of decency." Accordingly, the Court denies the Defendants' motion for summary judgment regarding Walker's claims for intentional infliction of emotional distress.

### Negligence and/or Willful and Wanton Conduct (Count VIII)

The essential elements of a cause of action based on common law negligence in Illinois are the existence of a duty owed by the defendant to the plaintiff, breach of that duty, and an injury caused by that breach. *See Clifford v. Wharton Business Group, L.L.C.,*

353 Ill. App. 3d 34, 40 (Ill. App. 2004)(citing *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140 (Ill. App. 1990) ). Illinois common law does not have a "separate and independent tort of willful and wanton misconduct." *Sparks v. Starks*, 856 N.E.2d 575, 578 (Ill. App. Ct. 2006). Instead, "[w]illful and wanton misconduct is essentially an aggravated form of negligence, regarded as a hybrid between conduct considered negligent and conduct considered intentionally tortious." *Id.* at 577. To prevail on a claim of willful and wanton misconduct, Walker must establish the elements of a negligence claim in addition to showing the Defendants had "either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Jane Doe-3 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012).

Courts have held that there is no meaningful difference between "willful and wanton" and "deliberate indifference" as used in federal constitutional law. *See Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) (stating that "[w]e have found that the standard for assessing whether conduct is willful and wanton is remarkably similar to the deliberate indifference standard." (internal quotation marks omitted)). Because the Court found questions of material fact regarding the failure to protect, the failure to intervene and the conditions of confinement claims, the Court likewise finds question of material fact exist as to the willful and wanton claims that preclude summary judgment as to the claims against Defendants Atchison, Harrington, Edwards, Ranson and Young.

### *Respondeat Superior* **(Count IX)**

Defendants argue they are entitled to summary judgment on the *respondeat superior* claim because Walker brought this action pursuant to 42 U.S.C. § 1983 and claims for

*respondeat superior* are not allowed in §1983 actions. Further, Defendants argue that Walker cannot show that any Defendant violated his constitutional rights, and thus, Atchison and Harrington cannot be found liable.

As stated previously, "[i]t is well established that there is no *respondeat superior* liability under §1983." *Gayton v. McCoy,* 593 F.3d 610, 622 (7th Cir. 2010); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018).

Here, Walker brings this claim, Count IX, against Atchison, Harrington and Hutchinson based on Illinois state law. (Doc. 88, p. 15).   Thus, to the extent that Walker's 1983 claims are based solely on the acts of subordinates, Walker cannot maintain § 1983 causes of actions against them. To the extent that Walker alleges IDOC policy violations, such claims fail to state a constitutional claim. *See Waubanascum v. Shawano County,* 416 F.3d 658, 670 (7th Cir. 2005)(noting that a violation of state law does not provide a basis for liability under §1983). Accordingly, Walker cannot bring Section 1983 claims against Atchison and Harrington based solely on their positions as administrators of the facility.

However, as to the state law claims, Illinois as a general matter, recognizes the *respondeat superior* doctrine. *See Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009). *See also Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004).   Thus, based on the previous analysis, *supra,* the Court finds that genuine issues of material fact preclude summary

judgment as to Atchison and Harrington on the state law *respondeat superior* claims. Thus, the Court denies this portion of the motion for summary judgment.

### Indemnification (Count X)

On May 1, 2017, Judge Rosenstengel denied Defendant's motion to dismiss as to this Count noting, "Walker also indicates he did not intend to bring a claim for indemnification; rather, his Second Amended Complaint only indicates that Defendant Officers are indemnified by the State under the State employee Indemnification Act, 5 ILSC § 350, *et seq.* Accordingly, Walker asserts there is simply no claim for indemnification for the Court to dismiss." (Doc. 109, ps. 2, 4).

### Qualified Immunity

Further, the undersigned finds that Defendants are not entitled to qualified immunity. In 2013, it was clearly established that the risk of an attack by a cellmate constitutes a risk of serious harm, and that prison officials may not retaliate against inmates for filing grievances. *See Farmer*, 511 U.S. at 833 (stating that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."). *See also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006); *Pope*, 86 F.3d at 92. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020)(noting that prison officials may not retaliate against inmates for filing grievances).

### State Sovereign Immunity

The Illinois State Lawsuit Immunity Act provides that the State shall not be made a defendant in any Court except as provided in either the Public Labor Relations Act (not

an issue here) or the Court of Claims Act. *See* 745 Ill. Comp. Stat. § 5/1. State sovereign immunity rules apply to state law causes of action brought in federal court against state officials. *See Omosegbon v. Wells,* 335 F.3d 668, 673 (7th Cir. 2003). The Illinois State Lawsuit Immunity Act provides that the state cannot be sued unless one of a limited number of exceptions applies. *See* 745 Ill. Comp. Stat. § 5/1. One such exception is found in the Illinois Court of Claims Act, which requires all claims against the state "sounding in tort" to be heard in that court. 705 Ill. Comp. Stat. § 505/8(d). *See also Jinkins v. Lee*, 807 N.E.2d 411, 417 (2004). Thus, if Walker's state law claims are being brought against the state itself rather than against Defendants individually, the claim must be litigated in the Illinois Court of Claims. *See Jinkins,* 807 N.E.2d at 417.

The determination of whether a state law claim is being brought against the state depends on the "issues raised" and the "relief sought," rather than on the formal designation of the parties. *Fritz v. Johnston,* 807 N.E.2d 461, 466 (2004). An action is considered to be against the state if the following factors exist: there are no allegations that the defendant acted beyond the scope of his office's authority through wrongful acts; the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment; and the complained-of actions involve matters ordinarily within the defendant's official functions. *See Richman v. Sheahan,* 270 F.3d 430, 441 (7th Cir. 2001); *Healy v. Vaupel,* 549 N.E.2d 1240, 1247 (1990); *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009).

Sovereign immunity affords no protection when it is alleged that the defendant acted with malice. *See Welch v. Ill. Supreme Court,* 751 N.E.2d 1187, 1197 (2001). "Malice"

in this context means "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstance that the law will imply an evil intent." *Mgmt. Ass'n of Ill., Inc. v. Bd. of Regents of N. Ill. Univ.*, 618 N.E.2d 694, 705 (1993). Further, the "doctrine of sovereign immunity affords no protection when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Leetaru v. Bd. of Trustees of Univ. of Illinois*, 32 N.E.3d 583, 596 (Ill. 2015). Accord *Murphy v. Smith*, 844 F.3d 653, 658-659 (7th Cir. 2016).

Here, Walker alleged that Defendants not only committed the state law torts of IIED, willful and wanton conduct and *respondeat* superior, but also that they violated the Eighth Amendment. There is disputed evidence that Defendants infringed upon Walker's constitutional rights. As stated previously in this Order, no prison official has the authority to ignore a prisoner's request for protection from an attack from another inmate. Thus, the evidence in this case establishes a genuine issue of fact as to whether Defendants were deliberately indifferent to Walker in violation of the Eighth Amendment. Consequently, Walker's state law claims against Defendants can proceed in this Court without offending the Illinois doctrine of sovereign immunity.

**Public Official Immunity**

Public official immunity is a common law doctrine that dictates public officials are immune from individual liability for "the performance of discretionary duties performed in good faith" and "unique to the particular public office." *Currie v. Lao*, 592 N.E.2d 977, 984 (Ill. 1992); *Kinzer v. City of Chi.*, 539 N.E.2d 1216, 1220 (Ill. 1989). Defendants argue that they are entitled to public official immunity on the state-law tort claim for willful

and wanton conduct because they were performing discretionary acts that are authorized by law and that Walker's allegations fail to rise beyond the scope of public official immunity. The Court rejects Defendants' argument. The evidence before the Court establishes issues of material fact as to whether they performed their duties in good faith. Thus, the Court denies the motion for summary judgment based on public official immunity.

C<small>ONCLUSION</small>

Accordingly, the Court **GRANTS in part and DENIES in part** the motion for summary judgment (Doc. 176). The motion is **GRANTED** as to all the claims against Jeff Hutchinson; all the claims against Christopher Fleming; Count I – failure to intervene claim against Edwards, Atchison, and Harrington; Count III – conditions of confinement claim against Defendants Edwards, Ranson and Young; Count IV – substantive due process (state created danger) claim against all Defendants; Count V – retaliation claim against Atchison, Harrington, Ranson and Young; Count VI - the conspiracy claims against Defendants Atchison, Edwards, and Harrington; and **DENIED** as to the remaining claims against the other Defendants.

At the close of the case, the Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Defendant Jeff Hutchinson on all claims; enter judgment in favor of Christopher Fleming on all claims; enter judgment in favor of Atchison, Edwards and Harrington on Count I- failure to intervene; enter judgment in favor of Edwards, Ranson and Young on the Count III – conditions of confinement claim; enter judgment in favor of all Defendants on Count IV – substantive due process (state created danger) claim;

enter judgment in favor of Defendants Harrington, Atchison, Edwards, and Fleming on Count VI - the conspiracy claim; enter judgment in favor of Harrington, Atchison, Ranson, Young and Fleming on Count V- retaliation claim and against Henry Walker.

The remaining claims for trial are: Count I – failure to intervene against Ranson and Young; Count II – failure to protect against Atchison, Edwards, Harrington, Ranson and Young; Count III – conditions of confinement against Atchison and Harrington; Count V retaliation against Defendant Edwards; Count VI- conspiracy against Ranson and Young; Count VII – Intentional Infliction of Emotional Distress; Count VII- negligent or willful and wanton conduct; Count IX – state law claims of *respondeat superior* against Atchison and Harrington. The Court **REMINDS** the parties that this matter is set for settlement conference on April 9, 2020 at 9:00 a.m.

**IT IS SO ORDERED**.

**DATED: March 13, 2020.**

Digitally signed by
Magistrate Judge
Gilbert C. Sison
Date: 2020.03.13
15:05:55 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**